Lenk, J.
This case is before the court on: (1) the request of plaintiff, John C. Ottenberg (“Receiver”), acting as receiver of D. Dev Monga and Core Environmental Resources, Inc. (“Core Environmental”), for a preliminary injunction; (2) the motions of defendants, Vanguard Fiduciary Trust Co., Vanguard Morgan Growth Fund, Founders Funds, Inc., Citadel Service Co., Inc., and Investors Fiduciary Trust Co. to dismiss the Receiver’s complaint and his substitute complaint to effect turnover of accounts; and (3) the Vanguard defendants, separate motion to dismiss the contempt complaint brought against them by the Receiver.
On September 23, 1994, the Receiver brought an action for contempt against the Vanguard defendants as a result of their failure to comply with earlier orders of this court instructing the Vanguard defendants to turn over to the Receiver certain funds representing Monga’s mutual fund shares in a Vanguard IRA mutual fund account. On January 5, 1995, the Receiver filed a complaint against all defendants seeking a preliminary injunction and declaratory judgment instructing defendants to turn over to the Receiver all accounts in the name of Monga or Core Environmental. On February 17,1995, the Receiver filed a substitute complaint which added counts for breach of contract, conversion, specific performance, and enforcement of judgment against all defendants. Additionally, the substitute complaint added a count against’ Monga seeking to determine whether the various mutual fund IRA accounts are valid IRA accounts and, as such, allegedly exempt from attachment by creditors.
Pursuant to Mass.R.Civ.P. 12(b), all defendants now move to dismiss the substitute complaint and defendants Vanguard Fiduciary Trust Co. and Vanguard Morgan Growth Fund (the “Vanguard defendants”) also move to dismiss the contempt complaint. Defendants assert that because this court lacks jurisdiction over the mutual fund shares, it does not have jurisdiction to consider any of the claims in this case or to issue valid orders to defendants regarding such shares, the violation of which orders could subject defendants to contempt. For the reasons set forth below: (1) The Receiver’s request for a preliminary injunction is denied; (2) defendants’ motions to dismiss the Receiver’s complaint to effect turnover of accounts is denied; and (3) the Vanguard defendants’ motion to dismiss the contempt complaint is denied on the grounds stated. However, pursuant to Mass.R.Civ.P. 65.3(a)(3) and this court’s inherent discretion in exercising its contempt power, this court dismisses the contempt complaint without prejudice.
BACKGROUND
The actions now before the court stem from an underlying lawsuit in which plaintiff Paul F. Sommer obtained a final judgment against Monga and Core Environmental. On June 15, 1992, this court appointed John C. Ottenberg as receiver of Monga and Core Environmental. Subsequently, this court ordered Monga to turn over his mutual fund IRA accounts to the Receiver. Monga refused to comply with the court’s order. Monga’s refusal to turn over the mutual fund accounts led the Receiver to seek court orders instructing the Vanguard defendants, Founders Funds, Inc., and Citadel Service Co., Inc. as the custodians of the IRA accounts, to turn over any accounts in the name of Monga or Core Environmental. On July 6, 1992, and August 20, 1992, this court issued orders instructing defendants to turn over the mutual fund accounts.[3]
Monga countered, the court is informed, by threatening that if defendants delivered any of the accounts to the Receiver, he would take legal action against defendants.[4] Faced with opposing threats, defendants froze the accounts of Monga and Core Environmental. This action prevented Monga from redeeming the shares or otherwise depleting the assets in the accounts. The Receiver continued to make demands upon defendants that they comply with the court’s orders. Defendants, however, refused to comply.
On September 26, 1994, the Receiver filed a complaint seeking to have defendants adjudged as being in contempt of this court’s orders.[5] On January 5, 1995, the Receiver also filed a complaint against defendants seeking a preliminary injunction and declaratory relief instructing defendants to turn over the mutual fund accounts. On February 17, 1995, the Receiver filed a substitute complaint adding counts for breach of contract, specific performance, conversion, and enforcement of judgment against all defendants. The substitute complaint also added a count against Monga seeking to determine the validity of the IRA status of the various mutual fund accounts.
Defendants now move to dismiss the complaint and the substitute complaint to effect turnover of accounts. The Vanguard defendants also move to dismiss the contempt complaint.
*610 DISCUSSION
I. Validity of the Court’s Jurisdiction
Resolution of the jurisdictional issues presented here requires this court to summarize briefly some of the basic, yet ever opaque, concepts of jurisdiction. First, the court must decide whether an action should be characterized as in rem, quasi in rem, or in personamin nature. Joseph R. Nolan, Civil Practice, §62, at 68 (1992). “An action is in rem if it is directed against property, itself, as in admiralty, ... or where it seeks to bar the interest of all persons, known or unknown in the res.” Joseph R. Nolan, supra, §63, at 69; see also Tyler v. Judges of the Court of Registration, 175 Mass. 71, 75-77 (1900) (discussing the nature of in rem actions and what is meant when it is said that “a judgment in rem runs against the property”). Generally, in rem actions only involve “real property [and] some interest therein.” Joseph R. Nolan & Laurie J. Sartorio, Equitable remedies, §102, at 176 (1992). Except for the probate of a will, the “instances in which a court acts strictly in rem [as to personal property] are negligible.” Joseph A. Nolan & Laurie J. Sartorio, supra.
A quasi in rem action is “a proceeding involving] a res” where “only the rights of certain named persons are sought to be affected in the proceeding...’’ Joseph R. Nolan, supra, §64, at 71. Examples of quasi in rem actions include actions to reach and apply property, actions involving trusts, and suits to determine the validity of mortgages or other encumbrances in land. Joseph R. Nolan & Laurie J. Sartorio, supra, §83, at 154-55 n.7.
If an action “runs against the person and seeks to establish the personal liability of the defendant, whether the action be in contract or tort, the action is classified as a personal action, or an action in personam." JosephR. Nolan, supra, §65, at 72; see also Tyler v. Judges of the Court of Registration, supra, at 76 (in which then Chief Justice Holmes noted that “if the technical object of the suit is to establish a claim against some particular person, with a judgment which generally, in theory at least, binds his body, or to bar some individual claim or objection, so that only certain persons are entitled to be heard in defence, the action is in personam, although it may concern the right to or possession of a tangible thing”).
Here, the Receiver’s substitute complaint brings counts against all defendants for breach of contract, conversion, specific performance, a declaratory judgment, and enforcement of judgment. The substitute complaint also contains a count against Monga alleging fraud in the establishment of the various IRA accounts. The counts for breach of contract, conversion, specific performance, and fraud are in personam actions. These actions are not in rem actions. The Receiver’s claims only seek to clarify the interest of the Receiver and defendants in the IRA accounts. The claims do not “seek to bar the interest of all persons, known or unknown in the res.” See Joseph R. Nolan, supra, §63, at 69. Nor are these quasi in rem actions. As noted above, quasi in rem actions traditionally encompass a narrow class of actions concerning interest in real properly, trusts, and actions to reach and apply. Rather, the claims for breach of contract, conversion, specific performance, and fraud fall within the definition of an in personam action. Although these claims ultimately concern “the right to or possession of’ the funds in the IRA accounts, the claims for breach of contract, conversion, specific performance, and fraud, “seek to establish the personal liability” of defendants. See Joseph R. Nolan, supra, §65, at 72 (defining actions in contract and tort as being in personam actions); see also Tyler v. Judges of the Court of Registration, supra. Thus, the Receiver’s claims for breach of contract, conversion, specific performance, and fraud are in personam actions.
The substitute complaint also seeks equitable remedies in the form of a preliminary injunction, declaratory judgment, and the enforcement of a judgment. In Massachusetts, “equity acts in personam and not in rem." Joseph R. Nolan & Laurie J. Sartorio, Equitable remedies, §51, at 74 (1992); see id., infra, §81, at 149-150 (noting that “[t]his maxim has become firmly fixed in the law of this Commonwealth as regards equitable jurisdiction and the ordinary action for equitable relief is considered as one in personam!’).[6] In light of this rule, therefore, the Receiver’s equitable claims are also properly characterized as in personam actions. Having determined that Receiver’s complaints present in personam actions, this court now turns to the second tier of the analysis: the jurisdictional prerequisites.
Deciding whether the court has jurisdiction to hear the in personam actions now before it requires this court to engage in a “dual inquiry as to the power of the [court] over the subject matter and as to power over the persons of the parties.” Joseph R. Nolan, supra, §62, at 68. Subject matter jurisdiction is defined as the court’s “power or competence to decide the kind of controversy that is involved” in a particular lawsuit. JackH. Freidenthal, MaryK. Kane, & Arthur R. Miller, Civil Procedure, §2.1, at 8 (3d ed. 1993). The Superior Court shares concurrent jurisdiction with the Supreme Judicial Court over all matters of general equity jurisdiction. G.L.c. 214, §1 (1992 ed.). Rooted in this general equity jurisdiction is this court’s contempt power, New England Novelty Co. v. Sandburg, 315 Mass. 739, 746, cert, denied, 323 U.S. 740, 746 (1944), see also John M. Connors, The Law of Contempt in Massachusetts: An Overview, 63 Mass.L.Q. 161 (1978), as well as this court’s authority to issue preliminary injunctions, Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980), to require specific performance, Noyes v. Bragg, 220 Mass. 106, 109 (1915), see also Joseph R. Nolan & Laurie J. Sartorio, supra, §264, at 426-27, and to enforce judgments, Byron v. Concord National Bank, 299 Mass. *611 438, 443-44 (1938). General Laws c. 231A, §1 (1992 ed.), sets forth this court’s authority to make binding declaratory judgments. Donald R. Simpson and Howard J. Alperin, Summary of Basic Law, §1192, at 47-48 (1974); see also Joseph R. Nolan & Laurie J. Sartorio, supra, §281, at 431-32. Likewise, G.L.c. 212, §4 (1992 ed.) grants this court original jurisdiction over all civil actions, including breach of contract and the tort of conversion. Through defendants’ various motions to dismiss, defendants appear to challenge this court’s subject matter jurisdiction over the contempt complaint and the subsequent complaints to effect turnover of accounts.[7] In challenging this court’s jurisdiction, defendants begin with the indisputable proposition that subject matter jurisdiction is a prerequisite to the court’s ability to hear a dispute. Here, defendants insist, the subject matter of the dispute are the shares in the mutual fund IRA accounts of Monga and Core Environmental that are held by defendants. Since the mutual fund shares are intangibles, defendants continue, a court only has jurisdiction over the shares if the shares are physically located within the court’s territorial boundaries. Defendants point out that the account shares in the names of Monga and Core Environmental are uncertificated and not located in Massachusetts. Thus, defendants conclude that this court lacks jurisdiction over the funds in the accounts.
Defendants’ argument appears to confuse the concepts of jurisdiction outlined above. Defendants’ challenge to the court’s subject matter jurisdiction is, in substance, actually a challenge to the jurisdictional prerequisites needed for this court to exercise in rem or quasi in rem jurisdiction. As such, defendants’ challenge to the court’s subject matter jurisdiction is unpersuasive. Thus, this court has subject matter jurisdiction over the counts in the Receiver’s complaints. This court now turns to the issue of personal jurisdiction.
Personal jurisdiction refers to the power of the court to award a judgment that imposes personal liability on the defendant. Massachusetts Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for lack of jurisdiction over the person. Rule 12(h)(1), however, states that a defendant waives lack of jurisdiction over the person as a defense if the defendant fails to include it in a Rule 12(b) motion.
Here, defendants appear to concede that this court has personal jurisdiction over them. The Receiver’s opposition to defendant’s motion to dismiss the first complaint to effect turnover of accounts asserts that the court has personal jurisdiction over defendants because, in essence, defendants have sufficient contacts with, and did business in, Massachusetts. In responding to the Receiver’s argument, defendants did not dispute the presence of personal jurisdiction. Rather, defendants only challenged the court’s subject matter jurisdiction. At the very least, however, by failing to raise lack of personal jurisdiction as a defense pursuant to Mass.R.Civ.R. 12(b)(2), defendants have waived this defense. Mass.R.Civ.P. 12(h)(1).
In sum, having found that this court has subject matter jurisdiction over the claims before it and because defendants have waived any challenge to this court’s jurisdiction over their persons, this court has jurisdiction to consider the actions contained in the Receiver’s complaints.[8]
II. The Receiver’s Request for a Preliminary Injunction
The Receiver’s complaint to effect turnover of accounts and his later substituted complaint to effect turnover of accounts both request this court to issue a preliminary injunction ordering defendants to turn over all funds in any accounts held by defendants in accounts standing in the names of “Dharam D. Monga, IRA” or “Core Environmental Engineering Resources, Inc.” In determining whether to grant a preliminary injunction, this court considers the balancing test set forth in Packaging Industries Group, Inc. v. Cheney 380 Mass. 609, 616-17 (1980). See also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). First, the court must evaluate, in combination, “the moving party’s claim of injury and its chance of success on the merits.” Id. at 617. If failing to issue the injunction “would subject the moving party to a substantial risk of irreparable harm, this court must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. “In the context of a preliminary injunction, the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either at law or in equity." Id. at 617 n.l 1. Moreover, in appropriate cases the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993). Finally, a preliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Charles Wright and Arthur Miller, 11 Federal Practice & Procedure, §2948, at 428-29 (1973)
To satisfy his burden of persuasion concerning the preliminary injunction, the Receiver only relies on his likelihood of succeeding on the merits. The Receiver contends that the receivership order and the orders subsidiary thereto, which clearly and unequivocally establish his claim of right to possession and control of the funds in the accounts held by defendants, are sufficient in and of themselves to justify the issuance of the preliminary injunction. The Receiver makes no showing that failure of the court to issue the injunction “would subject [the Receiverl to a substantial risk of irreparable harm.” Packaging Industries Group, Inc. v. Cheney, supra.
*612 Opposing the Receiver’s request for the preliminary injunction, defendants point to the Receiver’s failure to show any risk of irreparable harm. Furthermore, defendants argue that so long as they continue voluntarily to freeze the accounts, the Receiver cannot show a substantial risk of irreparable harm.
As noted above, the movant carries the burden of persuading the court by a clear showing that injunctive relief is warranted. Accordingly, before this Court will grant a preliminary injunction, the Receiver must show that he faces a substantial risk of irreparable harm if injunctive relief is not granted. Because the Receiver makes no showing of irreparable harm, injunctive relief is not warranted at this time on this basis alone.[9]
Assuming arguendo that the Receiver had made a showing of a substantial risk of irreparable harm, this court would still have to balance any such harm to the Receiver against any similar risk of irreparable harm to defendants if the court granted the injunction. Here, this court recognizes the precarious position in which defendants find themselves. Both the Receiver and Monga lay claim to funds in the frozen accounts. The Receiver contends that as a receiver he stands in the shoes of Monga and is, therefore, entitled to liquidate the funds in the IRA accounts. On the other hand, it is represented to the court by defendants that Monga insists that the IRA accounts are exempt from attachment by the Receiver. Until the validity of these claims is determined, any action by defendants exposes them to litigation.
Additionally, this court agrees with defendants’ argument that so long as the funds in the accounts remain frozen, the Receiver faces no substantial risk of irreparable harm. However, this court also recognizes that because defendants are voluntarily freezing the accounts, the threat of irreparable harm to the Receiver remains a future possibility.
Any change in the status of the funds that would result in their dissipation would, in the view of this court, raise a colorable and immediate claim concerning irreparable harm to the Receiver. Thus, although this court does not find injunctive relief to be an appropriate remedy at this time, this court reserves the rights to revise its order if there is any change to the status of the funds.[10]
III. The Appropriateness of Contempt as a Remedy
Despite the Vanguard defendants’ failure to set forth arguments justifying dismissal under Mass.R.Civ.P. 12(b) this court, nonetheless, is troubled by the appropriateness of a civil contempt proceeding against the Vanguard defendants. The purpose of this court’s contempt jurisdiction is “to enforce orders and to punish for acts tending to degrade or obstruct the administration of justice.” See John M. Connors, supra, at 164. Massachusetts Rule of Civil Procedure 65.3(a) specifies the situations justifying the invocation of a court’s civil contempt power:
Applicability. Enforcement of compliance with the following court orders shall be sought by means of a separate civil proceeding denominated as a ‘civil contempt proceeding’: (1) temporary restraining orders, preliminary or permanent injunctions pursuant to Rule 65, or stipulations in lieu thereof; (2) orders issued pursuant to Rule 70; and (3) any other orders or judgments entered pursuant to these rules, for the violation of which civil contempt is an appropriate remedy . . . (emphasis added).
In the present case, the orders for which plaintiff alleges defendants are in contempt do not constitute any of the types of orders delineated in Rule 65.3(a)(1) or (2). Therefore, plaintiffs contempt complaint falls under the “catch-all” provision of Rule 65.3(a)(3). The language of Rule 65.3(a)(3) requires this court to determine if the violation of the orders here constitutes a “violation [for] which civil contempt is an appropriate remedy ...” This is a determination usually made after the court has considered the merits of the contempt complaint. However, given the procedural history of this contempt action and the fact that the Receiver has now brought an action directly against all defendants, including the Vanguard defendants, this court believes that the determination of whether civil contempt is an appropriate remedy should not be postponed.
At this juncture, a contempt proceeding is premature. In light of the fact that defendants were not parties to this case until after the subject orders were issued, that Monga threatened legal action against them if defendants were to comply with the court’s orders by turning over the accounts to the Receiver, and that defendants have appeared before this court with an articulable and reasoned basis for believing that they were not properly subject to said orders, defendants’ conduct is not the kind of obstructive, thwarting, disrespectful and generally contumacious behavior which warrants sanction. Therefore, given the discretion afforded by Rule 65.3(a)(3) and this court’s inherent discretion over its contempt powers, this court dismisses plaintiffs’ contempt complaint without prejudice to being brought again if further court orders are disobeyed.
ORDER
For the foregoing reasons, it is hereby ORDERED that:
(1) The Receiver’s request for a preliminary injunction be DENIED without prejudice to the Receiver’s right to renew his request for a preliminary injunction. In issuing this order this court relies on the repeated representations of defense counsel that the funds in the mutual fund accounts of Monga and Core Environmental will remain frozen and will not be dissipated prior to the determination of the validity of the accounts and/or a determination of the Receiver’s rights *613 to the funds in the accounts. Furthermore, it is hereby ORDERED that if defendants contemplate any change in the status of the funds, defendant shall immediately notify the Receiver, thus allowing the Receiver to renew his motion for a preliminary injunction and to make the requisite showing of irreparable harm;
(2) Defendants’ motions to dismiss Receiver’s Complaint to Effect Turnover of Accounts pursuant to Mass.R.Civ.P. 12(b)(1) be DENIED;
(3) Defendants’ motions to dismiss Receiver’s Substitute Complaint to Effect Turnover of Accounts pursuant to Mass.R.Civ.P. 12(b)(1) be DENIED; and
(4) Receiver’s Complaint for Contempt be DISMISSED without prejudice.

Prior to the court’s orders, defendants had no involvement with this case.

In response to the court’s order Citadel had actually delivered a check to the Receiver representing the transfer of the funds held in those accounts, but apparently due to Monga’s threats Citadel stopped payment on the check.

The Receiver also threatened to file contempt proceedings against Founders Funds and Citadel, its transfer agent. Faced with the Receiver’s threat, however, Founders Funds stated that it and Citadel would turn over the accounts if the court entered an order delineating certain procedures to facilitate the transfer. On December 16, 1994, this court issued the order. To date, it appears that neither Founders Funds nor Citadel have turned over the accounts.

This court’s contempt power is also rooted in its general equity jurisdiction. Thus, contempt is also an in personam action.

Although only the Vanguard defendants challenge the court’s jurisdiction to consider the contempt complaint, all defendants challenge the court’s jurisdiction to consider the counts in the complaints to effect turn over of accounts. To support their various motions contesting this court’s jurisdiction, defendants rely on the argument advanced by the Vanguard defendants in their motion to dismiss the contempt complaint. By reference all defendants incorporate the Vanguard defendants’ argument into their motions to dismiss the complaints to effect turn over of accounts. It should also be noted that defendants never clearly identify on what basis or bases they challenge this court’s jurisdiction. Although defendants move to dismiss the Receiver's various complaints, defendants never specify whether they are moving pursuant to Mass.R.Civ.P. 12(b)(1) or (2). Given that in moving to dismiss the Receiver’s complaint to effect turn over of accounts defendants appear to concede that they are not challenging the court’s personal jurisdiction and because defendants’ motions fail to assert lack of jurisdiction over the person as a defense, it is deemed to be waived. Mass.R.Civ.P. 12(g). See also James W. Smith and Hiller B. Zobel, Rules Practice, §12.22, at 308 (1974).
Additionally, in an order dated December 16, 1994, this court concluded that it had personal and subject matter jurisdiction over defendant Founders Funds, Inc. Any request for reconsideration of that order should comply with Superior Ct. R. 9D.

In finding jurisdiction to consider the actions stated in the Receiver’s complaints, this court does not reach the apparent choice of law arguments set forth in defendants’ motion to dismiss the Receiver’s complaint seeking to effect turn over of accounts. Resolution of that issue at this stage in the litigation would be premature.

Because the Receiver has not met his burden on the issue of irreparable harm, this court need not address whether the Receiver has a likelihood of succeeding on the merits.

Given Monga’s histoiy of thwarting the orders of this court and his propensity for moving assets before the Receiver can reach them, any change in the status of the funds would most likely constitute irreparable harm. Nonetheless this court leaves that determination for another day.